UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Donna L. Barringer,<br><br>              Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin,[1] Acting<br>Commissioner of Social Security,<br><br>              Defendant. | Civil Action No.  5:12-3531-DCN-KDW<br><br><br>REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further administrative action.

I.    Relevant Background

    A.    Procedural History

On January 14, 2009 Plaintiff protectively filed for DIB under Title II of the Act, 42 U.S.C. §§ 401-433, alleging she became disabled on January 1, 2006. Tr. 110-16.[2] After being denied initially and at the reconsideration level, Tr. 64-67, 70-71, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 72-73. The ALJ conducted a hearing on April

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Carolyn W. Colvin for Michael J. Astrue as Defendant in this action.

[2] Plaintiff later amended her alleged onset date to March 14, 2008. Tr. 192.

11, 2011, taking testimony from Plaintiff and Vocational Expert ("VE") J. Adger Brown, Jr. Tr. Tr. 19-59.

Representing Plaintiff at that hearing was her attorney, Stacy Thompson. The ALJ denied Plaintiff's claim in a decision dated May 11, 2011. Tr. 11-17. Plaintiff requested review of this decision from the Appeals Council, which denied her request on October 15, 2012, Tr. 1-6, making the ALJ's May 11, 2011 decision the Commissioner's final decision for purposes of judicial review. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed December 14, 2012. ECF No. 1.

B.   Plaintiff's Background

Born on May 7, 1956, Plaintiff was 51 years old on her alleged onset date. Tr. 117. She has a high school education. Tr. 22. Plaintiff's past relevant work ("PRW") has been principally that of an office clerk/customer service representative in the financial industry. Her employers included G W Services; Aristar Management; Citi Financial; and Carolina Appraisal Group. Tr. 27-31, 125. In applying for DIB, Plaintiff listed the following as limiting her ability to work: "heart attack, short-term memory loss, lower lumbar disc, hypothyroid, high cholesterol, depression." Tr. 139.

C.   Administrative Proceedings

1.   Plaintiff's Testimony

On April 11, 2011, Plaintiff appeared with counsel and testified in support of her application. Tr. 21-53. She testified that she was married and lived with her husband. Tr. 21-22. In response to questions from the ALJ, Plaintiff testified that she drove to the store and to take her granddaughter to dance, and that, on average, she drove approximately 55-60 miles each week. Tr. 22-26.

Plaintiff described her work history as a customer service representative with various employers, noting she interacted with customers, did office-type computer and filing work, and was involved in making loans in some instances. Tr. 26-31. When asked by the ALJ what, at that time, was her most severe impairment that kept her from working, Plaintiff indicated that at that time it would be her lower-back pain. Tr. 31. Plaintiff described that pain as feeling like "the worse tooth ache you ever can imagine[, and that it would cause her to] lay in the bed and cry." Tr. 37. She said the pain was primarily in the low part of her back and radiated into her right hip. *Id.* Plaintiff said there was not something that would cause the pain to become more severe, but that it was "an everyday thing." *Id.* Plaintiff testified that she took pain medication at least twice per day and that she usually took a nap after taking the medication. She estimated she napped for a total of two hours per day after taking the medication. Tr. 37-39. She also testified that she became tired easily since her heart attack. Tr. 39-40. Plaintiff said she did not have difficulties using her hands for simple functions and that she could reach above her shoulders to get something off of a shelf. Tr. 40-41. Plaintiff said her back started hurting after sitting about 15-20 minutes without moving positions in her chair and that after 30 minutes of sitting she would need to be able to stand. Tr. 41-42. After 20 minutes of standing, Plaintiff said her lower back began to hurt. Tr. 42-43. She estimated she would stand for about one hour when grocery shopping with her husband. Tr. 43-44. Plaintiff said the most she thought she could lift and carry was 10 pounds. Tr. 44. The ALJ asked whether Plaintiff had ever had back surgery, and she said she had not. Although it had been suggested to her, Plaintiff had not had back surgery because of her heart condition. Tr. 54.

        2.    VE Testimony

VE Brown also testified at the hearing. VE Brown identified Plaintiff's past relevant work ("PRW") was that of an office clerk (semi-skilled, light exertion, SVP of 3) and a loan clerk (semi-skilled, sedentary exertion, SVP of 4). Tr. 54. When asked what jobs an individual of Plaintiff's age, education, and experience could perform if she was limited to light work, with the option of alternating between sitting and standing every 30-to-45 minutes; could only occasionally twist, stoop, crouch, kneel, crawl, or climb; and needed to work in an environment "reasonably free from the extremes of temperature and humidity," the VE testified that Plaintiff could return to her prior work as either an office clerk or a loan clerk. Tr. 55-56. Plaintiff's counsel then asked what jobs would be available if the individual could lift no more than 10 pounds; stand or walk no less than two hours in an eight-hour workday; sit no more than three hours total; needed to walk around every 15 minutes, for five minutes each time; needed to lie down at "unpredictable intervals" once or twice a day; and was likely to be absent from work twice a month – consistent with the limitations Plaintiff's primary care physician, Dr. Shuler, identified in March 2011. Tr. 57. The vocational expert responded that the "cumulative effect of all those problems" would preclude work in any job on a sustainable basis. *Id.*

II.    Discussion

    A.    The ALJ's Findings

In his May 11, 2011 decision, the ALJ made the following findings of fact and conclusions of law:

> (1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

5:12-cv-03531-DCN     Date Filed 02/06/14    Entry Number 19     Page 5 of 20

>    (2)    The claimant has not engaged in substantial gainful activity since March 14, 2008, the amended alleged onset date (20 CFR 404.1571 *et seq*.).
>
>    (3)    The claimant has the following severe impairments: low back pain, cardiovascular problems, and neck pain (20 CFR 404.1520(c)).
>
>    (4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
>    (5)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), when afforded the option to sit or stand at her workstation every 30 to 45 minutes. She can lift and carry twenty pounds occasionally and ten pounds frequently. She can only occasionally stoop, twist, crouch, kneel, crawl, and climb. She requires a work environment reasonably free from extremes of temperature and humidity.
>
>    (6)    The claimant is capable of performing past relevant work as an office clerk (DOT #209.562.010), light, semiskilled. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965), according to the vocational expert.
>
>    (7) The claimant has not been under a disability, as defined in the Social Security Act, from March 14, 2008, through the date of this decision (20 CFR. 404.1520(f)).

Tr. 13-17.

    B.    Legal Framework

        1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

5

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

    B.    Analysis

Plaintiff claims the ALJ erred in the following ways: (1) Whether the ALJ properly evaluated the opinion of Plaintiff's treating physician, Vann Beth M. Shuler, M.D.; and (2) Whether the ALJ properly evaluated Plaintiff's credibility. Pl.'s Br. 3, ECF No. 12. The Commissioner submits that the ALJ committed no reversible error and his decision is supported by substantial evidence. Def.'s Br., ECF No. 15.

        1.    Consideration of Treating Physician's Opinion

Plaintiff argues the ALJ did not appropriately consider the opinion of her long-time treating physician, Dr. Shuler by giving it "little weight." Pl.'s Br. 3-18, *see* Tr. 17. The Commissioner defends the ALJ's decision and his consideration of Dr. Shuler's opinion as well

8

as other opinions of record in finding Plaintiff was not entitled to disability benefits. Def.'s Br. 10-15.

         a.  Opinion of Treating Physician Dr. Shuler

  On March 21, 2011, Dr. Shuler provided his opinion regarding Plaintiff's physical RFC. Tr. 518-19 ("Medical Opinion Re: Ability to do Work-Related Activities). Dr. Shuler opined that Plaintiff could lift and carry no more than 10 pounds on an occasional or a frequent basis, which he attributed to "Pain Neck & Back." Tr. 518. Dr. Shuler opined Plaintiff could stand or walk less than five minutes at a time, or two hours total, during an eight-hour day, and sit no more than 15 minutes at a time, or three hours total, without needing to get up and move around. *Id.* Dr. Shuler explained the standing and walking restrictions were based on Plaintiff's back pain and right leg pain and the sitting restrictions were based on leg and back pain. Tr. 518-19. Further, Dr. Shuler indicated Plaintiff had "arterial occlusion (Blockage)" in her right leg, despite a right "Iliac artery stent." *Id.* He further notes Plaintiff's 1998 cardiac arrest and the resultant "leg pain/weakness & 'giving out.'" *Id.* Dr. Shuler further opined Plaintiff should avoid even moderate exposure to hazards, and avoid concentrated exposure to humidity or extreme heat or cold; could not push, pull, kneel, or carry more than 20 pounds; could never twist, crouch, or climb ladders; and could only occasionally stoop or climb stairs. Tr. 519-20. Dr. Shuler also opined that Plaintiff could be expected to miss work about twice a month due to her impairments. Tr. 519. Dr. Shuler opined Plaintiff could sit for 15 minutes before needing to change positions, could stand five minutes before needing to change positions, and would need to walk around for about five minutes every 15 minutes. Tr. 520. He further specified that Plaintiff needed to be able to shift between positions at will, to lie down at unpredictable

9

intervals one-to-two times during the workday. *Id.* Dr. Shuler attributed these restrictions to Plaintiff's right iliac arterial occlusion. *Id.*[4]

### b. Other Opinion Evidence

On July 20, 2009, state agency consultative physician Monnieque Singleton, M.D. examined Plaintiff. Tr. 288-90. She noted that Plaintiff had undergone a coronary double artery bypass graft in 1992 and had a defibrillator. Tr. 289. Further, Dr. Singleton found Plaintiff's lungs were clear and detected no heart lift, heave, thrill, or murmur. *Id.* Dr. Singleton found Plaintiff had good "strength and tone" of the extremities with a full range of motion in shoulders, elbows, and wrists. She also found Plaintiff had good grip strength in her hands, a full range of motion with bending at the back, and a full range of motion of the hips, knees, and ankles. Tr. 289. Dr. Singleton found that Plaintiff had normal flexion, extension, and lateral flexion of the cervical and lumbar spine, as well as good cervical rotation. *Id.* Dr. Singleton noted Plaintiff's clavicle fracture, but found she had full range of motion in the shoulders and that her wrist dorsiflexion and palmar flexion were normal bilaterally. *Id.* Bilateral knee flexion and extension, bilateral hip motion, bilateral ankle flexion, bilateral straight leg raising, bilateral hand evaluation, grip strength, tandem walking, heel-to-toe walking, gait, muscle strength, sensation, and reflexes were all normal. Tr. 290. Dr. Singleton also noted that Plaintiff had mild difficulty getting out of a squatting position. *Id.* She assessed Plaintiff's impairments as including: "1. Mild arthritis, 2. Hypothyroidism under good control. 3. Hypertension under good control. 4. Depression with insomnia. 5. Hyperlipidemia. 6. Metabolic syndrome." *Id.*

---

[4] Although Dr. Shuler's handwritten note includes additional words regarding the medical findings supporting the limitations on sitting, standing, and walking, Tr. 520, the undersigned is unable to decipher them.

On August 12, 2009, state agency medical consultant John Maloof, M.D. reviewed the medical evidence of record and opined that Plaintiff could perform light work, except that she could never climb ladders, ropes, or scaffolds; could only frequently balance or stoop; could only occasionally kneel, crouch, crawl, or climb ramps or stairs; and needed to avoid concentrated exposure to hazards, extreme heat and cold, and fumes, odors, dusts, gases, and poor ventilation. Tr. 308-10. In explaining the evidence to support his conclusions, Dr. Maloof noted Plaintiff's X-rays showing degenerative spondylolisthesis at L4-5 and degenerative disc disease at L5-S1, for which PT and lumbar epidural injections had been recommended. Tr. 309. Dr. Maloof also noted findings from the July 20, 2009 consultative orthopedic examination. Tr. 309. He noted Plaintiff had no current cardiac symptoms and could drive, shop, and care for her personal needs. *Id.* In his Physical RFC Assessment, Dr. Maloof indicated the record did not contain any opinion from a treating source regarding Plaintiff's physical capabilities. Tr. 314.

In May 2010, state agency physician Jim Liao, M.D. reviewed the medical evidence of record and opined Plaintiff could perform light work with no postural limitations and environmental limitations as to avoiding concentrated exposure only to extreme temperatures and to humidity. Tr. 446-53. Dr. Liao listed many of the same medical information as listed by Dr. Maloof, but added some additional, more recent evidence relating to Plaintiff's heart condition, and recent reports of normal musculoskeletal findings. Tr. 448, 451, 453.

    c.  Additional Medical Evidence

As both Plaintiff and Defendant note, many of Dr. Shuler's treatment notes are handwritten and not entirely legible. Nonetheless, review of those numerous notes indicates Plaintiff saw Dr. Shuler regularly, often with complaints of back, neck, and leg pain. In addition, his notes indicated Plaintiff's difficulties in sitting, walking, and standing; he also prescribed

pain medications for her. *See, e.g.,* Tr. 234-35 (Dec. 2008-Jan. 2009, "still cannot sit/stand or walk for any distance"); 238 (Oct. 2008, "Right front leg hurts all the time. Very high risk for any intermit__of right leg. Sciatica – right all time. Still on Tylox and Soma. Cannot sit, stand any length of time. Can't sit__ can't stand__ right leg with ___ Hurts stand, sit & left app__"); 239 (Aug. 19, 2008, sciatica, prescribed Soma, Tylox, Lidoderm patch); 242 (Feb. 19, 2008, "increased neck pain/weight gain, edema, Myalgia"), (Mar. 6, 2008, "left shoulder and neck pain TRMC CT cervical spine, no contrast, March 14, @1200 A: Neck pain. P: Can't do MRI CT ___"); 256 (June 1, 2011, "shoulder/back pain X1 wk"); Tr. 522 (Dec. 7, 2010, "still [with] leg pain") (illegible portions of records indicated with "__").

Dr. Shuler referred Plaintiff to orthopaedist Lucius Craig, M.D. of the SC Orthopaedic Institute. *See* Tr. 221. In his treatment record from the November 12, 2008 examination of Plaintiff, Dr. Craig noted the following:

> PAST MEDICAL HISTORY: Patient is a 52-year old female with a chief complaints of back pain, right leg pain and buttock pain for one year. She is seen in consultation today for Dr. Shuler. She states the pain was initially intermittent but now it is constant. She states the pain starts in the back and radiates into the right hip. Her right foot goes numb and she gets a tingling in her toes. Patient currently rates the pain as an 8 on a 0:10 scale. Patient has no trouble with the bowel or bladder.

Tr. 221. On examination, Dr. Craig noted normal range of motion of the lumbar spine, normal reflexes, and strength. *Id.* Dr. Craig recorded tenderness to palpation at the right sciatic notch and in Plaintiff's lumbar spine over L4-5 and L5/S1. X-rays of the lumbar spine revealed the disc space at the L5/S1 level was at only 30% of the anticipated height for that level. Dr. Craig noted there was no pathologic instability on flexion or extension and a very mild scoliotic curve with apex at the L2-3 disc space, less than 10 degrees. *Id.* Dr. Craig recorded his impressions as "Degenerative spondylolisthesis at L4-5[, and] Degenerative disc disease at L5/S1." *Id.* Dr. Craig

determined Plaintiff's treatment plan would include referral to Dr. Gupta for lumbar epidural spine injections and referral to physical therapy. *Id.*

Plaintiff was treated by Avinash Gupta, M. D. of Low Country Pain Clinic. *See* Tr. 317-27, 481-84. Dr. Gupta first saw Plaintiff on November 19, 2008, and diagnosed her with lumbar DDD (degenerative disc disease) with right lumbar radiculitis. Tr. 326. Dr. Gupta determined he would treat Plaintiff with a caudal epidural injection and would consider a transforaminal epidural if Plaintiff did not get relief from the caudal epidural. *Id.* Dr. Gupta administered the epidural injection on November 25, 2008. Tr. 325. When he saw Plaintiff for follow-up on December 22, 2008, Dr. Gupta examined Plaintiff and noted that her gait was antalgic and that straight leg raising was painful at 75 degrees on the left and 50 degrees on the right. Tr. 324. He observed that Plaintiff had normal strength and flexion of the hips, quadriceps, and feet, and normal sensation and noted moderate pain with back extension and flexion as well as some lumbar paraspinous muscle tenderness with spasm on palpation. Tr. 324. Plaintiff received another injection in February 2009, Tr. 323, and reported at her August 10, 2009 follow-up visit that she had "very good relief" from that injection. Tr. 322. At that visit, Plaintiff indicated her lower back pain no longer radiated to her right leg but was localized to her lower back. *Id.* Dr. Gupta noted Plaintiff had tenderness in 2-3 facet areas and determined to treat her with Right L4 & L5 Facet Joint Injections, which she received on August 17, 2009. Tr. 321-22. When Plaintiff returned on September 28, 2009, she indicated her prior injections had provided good relief until she bent over the day before the visit. Tr. 320. On examination, Plaintiff was found to have a mildly antalgic gait and "some tenderness" in right paralumbar and right sacroiliac area. *Id.* Dr. Gupta assessed Plaintiff with right-sided lumbar radiculitis with maximum pain in lower back radiating to right buttocks. *Id.* He noted she had moderately severe degenerative disc disease at

13

L4 & L5, and determined he would treat her with transforaminal injections at L4-L5, which he did on the same day. Tr. 319-20. When Plaintiff returned in April 2010, Dr. Gupta noted that she had some tenderness in the lower back, and some pain with extension on the left side, a normal gait and straight leg raising was not painful on either side. Tr. 483. Dr. Gupta performed a right L3, L4, and L5 facet median branch block. Tr. 481.

### d.     ALJ's Consideration of Opinion Evidence

SSR 96-2p provides that if a treating source's medical opinion is "well-supported and 'not inconsistent' with the other substantial evidence in the case record, it must be given controlling weight[.]" *See also* 20 C.F.R. § 404.1527(c)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence).

The Social Security Administration typically accords greater weight to the opinion of a claimant's treating medical sources, because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Rather, "[c]ourts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d at 654; 20

C.F.R. § 404.1527. Treating source medical opinions are entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight. As explained in SSR 96-2p,

> a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96–2p. The Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* In reviewing the ALJ's consideration of the opinions of Plaintiff's physician, the court is focused on whether the ALJ's opinion is supported by substantial evidence. The court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589.

Here, in making his findings at step four regarding Plaintiff's RFC, the ALJ set forth some of Plaintiff's medical history, as well as a general summary of Dr. Shuler's opinion. Tr. 15-16. After discussing Plaintiff's testimony and considering her credibility, Tr. 16-17, the ALJ then considered the opinion evidence, as follows:

> As for the opinion evidence, the state agency found that [Plaintiff] could perform light work, and that physical examination indicated that she had normal range of motion in all joints, could walk without assistance with a normal gait, and could walk on heels and toes (Exhibit 10F, 16F) [opinions of state agency consultants,

15

>available at Tr. 308-15, 446-53]. These opinions are given substantial weight as they are consistent with the evidence, including the opinion of the consultative examiner (Exhibit 8f) [available at Tr. 288-92]. The state agency experts found that [Plaintiff's mental impairment was non-severe (Exhibit 9f, 15f) [available at Tr. 294-307, 432-45]. These opinions are also consistent with the evidence and are given substantial weight. The opinion at exhibit 22f [Dr. Shuler's opinion, Tr. 518-20] is considered but given little weight. Dr. Shuler's opinion is not supported by the evidence or by his own findings. In sum, the above residual functional capacity assessment is supported by the treating and examining evidence.

Tr. 17.

Having considered the record evidence and the arguments of the parties as set forth in their briefs, the undersigned is of the opinion that the ALJ did not adequately consider the opinion of Dr. Shuler. As Plaintiff notes, Dr. Shuler has been her primary treating physician since 2004, and the record includes notes of some 60 visits she has made to Dr. Shuler since that time. Pl.'s Br. 4 (generally citing Tr. 229-78 (visits from Nov. 22, 2004 through April 15, 2009),[5] 407-31 (records dated July 2, 1998 through April 6, 2010, some of which are copies of Plaintiff's visits with other treating sources provided to Dr. Shuler); 521-23 (visits from Mar. 30, 2010 through Mar. 21, 2011)). In addition, as Plaintiff's long-time primary care physician, he had referred her for various diagnostic tests and to specialists, and he had access to the information from those tests and the findings of those specialists in considering Plaintiff's condition and her RFC, including orthopaedist Dr. Craig and pain specialist Dr. Gupta. Dr. Shuler's notes and patient file on Plaintiff included reference to those specialists. *See, e.g.,* Tr. 235 (Dec. 4, 2008, notes Plaintiff had epidural injection from Dr. Gupta that had lasted one week, she was still prescribed Tylox); 235 (Dec. 23, 2008, Dr. Shuler notes Plaintiff's continuing to see Dr. Gupta);

---

[5] Plaintiff's amended alleged onset-of-disability date is March 14, 2008. The court cites to medical records prior to that date as an indication of the long-standing treating relationship between Plaintiff and Dr. Shuler.

235 (noting reference to Dr. Craig); 236-37 (Dr. Shuler's file copy of Dr. Craig's evaluation and findings).

Plaintiff argues the ALJ did not comply with 20 C.F.R. § 404.1527 because he did not consider the factors set forth in § 404.1527(c). The undersigned agrees. The "longitudinal relationship" between Dr. Shuler and Plaintiff is evidenced by the record. As Plaintiff notes, Dr. Shuler regularly examined Plaintiff and documented her complaints of back and leg pain. Additionally, he referred her to an orthopaedist who, in turn, referred her to a pain-management specialist. The records of Dr. Gupta and Dr. Craig were readily available to Dr. Shuler in offering his opinion regarding Plaintiff's RFC. Nowhere in the ALJ's decision does he reference the longstanding treatment relationship between Plaintiff and Dr. Shuler.

The ALJ did not factor Dr. Gupta's treatment as part of the clinical record by Dr. Shuler as the primary physician, nor did he otherwise note that Dr. Shuler had referred Plaintiff to Dr. Craig and, through him, to Dr. Gupta. Rather, the ALJ only generally referenced Plaintiff's treatment by Dr. Gupta, noting Plaintiff underwent lumbar injection therapy in September 2009 and noting she was treated for "non-radicular pain in 2009 and 2010." Tr. 16. The ALJ follows that statement by noting: "However, the records indicate that [Plaintiff's] blood pressure readings indicated good control (Exhibit 18f) [available at Tr. 481-84]." Tr. 16. The ALJ then notes that records from "a pain center where [Plaintiff] sought back treatment in 2009, indicated MRI reports indicating only moderately severe degenerative disc disease at L4-5. (Exhibit 12F, p. 4) [available at Tr. 320]." Tr. 16. The ALJ does not explain the significance of the blood pressure readings in the context of Plaintiff's treatment by Dr. Gupta. Further, as the record detailed above indicates, Plaintiff presented to Dr. Gupta for more than "non-radicular pain." *See, e.g.,* Tr. 319 (Sept. 28, 2009 diagnosis of right lumbar radiculopathy).

17

Regarding Dr. Craig's evaluation of Plaintiff, the ALJ merely noted that "[a]n orthopedist evaluated the claimant on November 14, 2008, and noted that x-rays indicated decreased disc space at L5-S1, and mild scoliosis at L2-3 and grade I spondylolisthesis at L4-5 (Exhibit 4f, p. 9) [available at 237]." Tr. 15. Although the ALJ's statement regarding the X-ray results is technically accurate, he did not further discuss Dr. Craig's findings, nor did he note Dr. Craig determined Plaintiff's condition required treatment by Dr. Gupta for injections and physical therapy. Rather, the ALJ noted the X-ray findings with no analysis.

Defendant argues the ALJ was not required to discuss each of the factors of 20 C.F.R. § 404.1527(c)(2) when considering the opinion of a treating physician, but he only need give "good reasons" for the weight given that opinion. Def.'s Br. 11 (citing *Warren v. Astrue*, No. 08-149, 2009 WL 1392898, at *3 (E.D.N.C. May 18, 2009)).

Here, however, the undersigned is of the opinion that the ALJ's consideration of the opinion of Dr. Shuler does not include sufficient discussion of the "good reasons" for giving that opinion "little weight." Rather, he simply states that Dr. Shuler's opinion "is not supported by the evidence or by his own findings." Tr. 17. He does not point to specific findings in the record that demonstrate why the opinion is not supported. Further, in giving the opinion of the nontreating, nonexamining state-agency opinions "substantial weight," the ALJ merely states those opinions are "consistent with the evidence," pointing to no specific evidence other than the opinion of the consultative examiner. Tr. 17.

The Commissioner also argues the ALJ's decision is supported by his discussion of evidence from other treating physicians (including Dr. Craig and Dr. Gupta) that was inconsistent with Dr. Shuler's opinion. Def.'s Br.12 (citing Tr. 15-16). In support of that argument, the Commissioner cites to various medical records not referred to by the ALJ in his

decision. Although the snippets of evidence the Commissioner provides in its brief could support the ALJ's decision to discount Dr. Shuler's opinion, such post-hoc rationalizations do not provide sufficient reason for the court to affirm the ALJ's decision. *See Knight v. Astrue*, C/A No. 9:07–3902–HFF, 2008 WL 5416423, (D.S.C. Dec. 30, 2008) (remanding in part because Commissioner's argument set forth in brief were impermissible post-hoc rationalizations that could not be used to affirm the Commissioner's decision (internal citations omitted)). The undersigned recommends remand so that the ALJ may fully consider the record evidence and detail the reasons for his findings. *See Harmon v. Astrue*, C/A No. 9:09–1964–DCN, 2010 WL 3786496, \*6 (D.S.C. Sept. 21, 2010) (remanding because ALJ did not discuss treating physician's opinion regarding one of plaintiff's claimed impairments, noting that "[i]n order to reject a treating physician's opinion, the ALJ must *explain* the rationale for the rejection and provide persuasive contradictory evidence.") (emphasis in original) (internal quotation and citation omitted).

2. Credibility

Plaintiff also claims the ALJ erred in his assessment of Plaintiff's credibility when considering her RFC. Pl.'s Br. 19-25. In considering a claimant's credibility, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, ¶ 5.  Here, the ALJ included various reasons for discounting Plaintiff's subjective claims of pain and her claimed inability to work. Tr. 16-17. However, much of this discussion focuses on the medical evidence concerning her claimed back pain. *See* Tr. 16. Because the undersigned recommends remand for further consideration and

analysis of the medical record in considering the opinion of Plaintiff's treating physician, such consideration could necessarily impact the analysis of Plaintiff's credibility. Accordingly, the court does not separately address this allegation of error at this time. However, on remand, the Commissioner is instructed to further consider Plaintiff's argument regarding credibility findings. *See Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on a particular ground and declining to address claimant's additional arguments).

III.     Conclusion and Recommendation

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions, it is recommended that the Commissioner's decision be reversed and remanded for further administrative action as discussed within.

IT IS SO RECOMMENDED.

February 6, 2014                                                                                       Kaymani D. West
Florence, South Carolina                                                                    United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**